# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

MARINA CRACCHIOLO,

    Plaintiff,

v.

VINCE & JOE'S FRUIT MARKET –
SHELBY, INC.

    Defendant.

---

## COMPLAINT AND JURY DEMAND

Plaintiff MARINA CRACCHIOLO, by and through her attorneys, TERESA J. GORMAN PLLC and CROSON, TAUB & MICHAELS PLLC, for her Complaint, states as follows:

### PARTIES AND JURISDICTION

1. This action arises under the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.A. § 2000e, *et seq.*; the Elliot-Larsen Civil Rights Act, M.C.L.A. § 37.1101, *et seq.*, and Michigan common law.

2. This Court has jurisdiction pursuant to 28 U.S.C.A. § 1331 (federal question jurisdiction) and 28 U.S.C.A. § 1343(a)(4) (jurisdiction over civil rights claims). This Court also has supplemental jurisdiction pursuant to 28 U.S.C.A. § 1367 over Plaintiff's state law claims.

3. Plaintiff is a resident of the United States and resides in the City of Grosse Pointe Shores, Wayne County, Michigan within the Eastern District of Michigan.

4. Defendant is a Michigan corporation doing business in Shelby Township, Macomb County, Michigan within the Eastern District of Michigan and continuously had at least fifteen (15) employees at all relevant times.

5. The discriminatory employment practices and all other acts alleged in this Complaint occurred within the Eastern District of Michigan.

6. This is an action for discrimination and retaliation in violation of Title VII, 42 U.S.C. 2000e, *et seq.* and the Elliott-Larsen Civil Rights Act, 37.2101 *et seq.*, breach of contract, and violation of Michigan public policy.

7. Defendant is an employer and Plaintiff was its employee within the meaning of Title VII and the Elliott-Larsen Civil Rights Act.

8. Plaintiff filed timely charges of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") alleging sex discrimination and retaliation for engaging in statutorily protected activity (EEOC Charge No. 47-2022-01836).

9. Plaintiff's charges were filed within 300 days of the commission of the unlawful employment practices alleged in this claim.

10. Plaintiff received her notice of right to sue on or about June 28, 2022 and has filed this complaint within 90 days of receiving her notice of rights.

11. The amount in controversy exceeds $75,000.00, exclusive of interest, costs, and attorney fees.

## GENERAL ALLEGATIONS

12. Plaintiff repeats and realleges paragraphs 1-11.

13. Plaintiff is a 37 year old female with a Master of Arts degree in journalism.

14. In or around the last week of July 2020, Plaintiff was employed as a Social Media Specialist with a local television station when Salvo Munaco, Defendant's Store Director, contacted her regarding the Advertising/Marketing Director position with Defendant.

15. On August 6, 2020, Plaintiff met with Mr. Munaco, Mimma Vitale (Defendant's co-founder), and Vince Vitale, Jr. (Store Manager of Defendant's location in Clinton Twp.).

16. At the August 6, 2020 meeting, Defendant offered Plaintiff the Marketing and Advertising Director position and assured Plaintiff that it was a remote (work from home) position with full benefits.

17. In July 2020, Defendant was aware that Plaintiff was the mother of a one (1) year old child.

18. The parties agreed that Plaintiff would be paid a yearly salary of $85,000 and provided with four (4) weeks maternity leave in the event of a future pregnancy.

19. On September 15, 2020, Plaintiff met with Mr. Munaco to pick up computer equipment and to start her first official week of work from home.

20. On September 17, 2020, the parties entered into a written Employment Agreement. (Exhibit 1)

21. In January 2021, Plaintiff informed Mr. Munaco that she was pregnant with her second child.

22. In April 2021, Plaintiff and Defendant's representatives engaged in multiple meetings to discuss Plaintiff's anticipated maternity leave.

23. In May 2021, Plaintiff requested that she be allowed to take her contracted-for 30 days of maternity leave, her contracted-for 4 weeks of vacation, and an additional month without pay as maternity leave, but with the understanding that she would be on-call for that final month.

24. Although Defendant granted Plaintiff's request for the 12 weeks of maternity leave, as detailed in paragraph 23, Mimma Vitale questioned Plaintiff about who would be providing childcare for Plaintiff and asked how she "could possibly return to work with a small baby." Plaintiff assured Ms. Vitale that she had full time childcare lined up and would be returning to work full time.

25. Prior to Plaintiff taking maternity leave, Plaintiff had consistently worked remotely and there had been no criticism of her performance, no complaints about her capabilities, and no discipline or counseling for any alleged misconduct.

26. In September 2021, Plaintiff returned to work full time.

27. On September 17, 2021, Plaintiff had an impromptu business call with Defendant's manager, Sal Zappa. When Plaintiff asked Mr. Zappa a work-related question. Mr. Zappa responded: why don't you come to the store if you want to talk?" He added "do me a favor and call Salvo. There is a lot of talk about you not coming in enough." Later that day, Plaintiff received an email from Cristina, Defendant's Head Accountant, saying Mr. Munaco wanted to discuss Plaintiff's job during a meeting and attaching Plaintiff's current job description. He then hung up on her.

28. The next day, two weeks after returning to work from maternity leave, Mr. Munaco gave Plaintiff her one year job review.

29. During this review, Mr. Munaco criticized Plaintiff's work, demanded that she commence working at the store on occasion rather than only work remotely, and referenced other alleged concerns that had never been previously raised.

30. During this review, Plaintiff complained to Mr. Munaco that his criticism was due to the fact that she had been on maternity leave.

31. In December 2021, Mr. Munaco directed Plaintiff to come to the workplace during the days before Christmas.

32. From December 19-23, 2021, Plaintiff worked 9am-6pm at Defendant's location doing newly assigned tasks not within her job description, such as catering, phone answering, working in the meat department, bagging groceries, and making cookies. These tasks took her away from her contracted-for advertising/marketing duties. As a result, Mr. Munaco and others chastised her for not being able to perform her own duties along with the new tasks and, conversely, screamed at her when she took time away from the new tasks to work on her advertising/marketing job duties.

33. On January 7, 2022, Plaintiff came to the work location despite not feeling well. At work, she encountered Mimma Vitale for the first time in months. Ms. Vitale directed Plaintiff to bag groceries, another task not in Plaintiff's job description as advertising/marketing director.

34. While meeting with Ms. Vitale, Plaintiff requested that she approve a social media video about gelato that Plaintiff had created. Ms. Vitale was pleased with the video and gave Plaintiff permission to send it out.

35. Later that same day, Plaintiff met with Mr. Munaco. During the meeting, Mr. Munaco informed Plaintiff that she was now required to work at the store at least three days a week rather than only work remotely. When Plaintiff

reminded him that they had agreed that her position was a remote work-from-home position and that if it was no longer as such, it would be a problem for her, Mr. Munaco said that her job "was always evolving."

36. The next day, January 8, 2022, Plaintiff and her husband were diagnosed with COVID19. Their children were also ill.

37. On January 12, 2022, Plaintiff returned to working from home.

38. On January 17, 2022, Plaintiff went to the work location at around 11:00 am after first visiting a competitor to conduct a competition analysis.

39. Shortly after arriving, Plaintiff was called into a meeting with Mr. Munaco, Defendant's head accountant, and Defendant's customer service manager, each of whom held a copy of the printout of Plaintiff's job duties in their hands.

40. Mr. Munaco ambushed Plaintiff, announcing that there "are just some things we need to improve on," proceeded to verbally modify the negotiated job duties and subject Plaintiff to unwarranted criticism and directing Plaintiff that she was now required to work at the location 5 days per week from 9-5.

41. Plaintiff was not allowed to respond to the various allegations nor respond to the change in her work location.

42. Mr. Munaco then slid a piece of paper over the desk to Plaintiff which reflected an elimination of her previously company-provided benefits and also a

reduction in salary from $85,000 per year to a flat $50,000 per year to cover both benefits of $14,09) and $35,981 of salary per year .

43.  Plaintiff quit and left the premises.

44.  Plaintiff has filed this claim within 90 days of receiving her right to sue letter from the EEOC.

## COUNT I
## Sex Discrimination in Violation of the ELCRA

45.  Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

46.  Plaintiff is a member of a protected group under the Elliott Larsen Civil Rights Act, M.C.L. 37.2101, *et seq.*, on the basis of her sex, as used in the Act the term sex includes pregnancy.

47.  Defendant violated the aforementioned Elliott Larsen Civil Rights Act by the following acts:

   a.  Terminating/constructively discharging, or otherwise discriminating against Plaintiff with respect to her employment, compensation, or a term, condition or privilege of employment, because of her sex;

   b.  Limiting, segregating, or classifying Plaintiff in a way which deprived or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff because of her sex;

   c.  Segregating, classifying or otherwise discriminating against Plaintiff on the basis of her sex with respect to a term, condition or privilege of employment, including a benefit plan or system;

   d.  Subjecting Plaintiff to Family Responsibilities discrimination;

  e. Failing to provide a work environment free from sex discrimination.

  48. As a direct and proximate result of Defendant's violation of the Elliott Larsen Civil Rights Act, Plaintiff has suffered bodily injury, feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future.

  49. As a further direct and proximate result of Defendant's violation of the Elliott- Larsen Civil Rights Act, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and ability to work and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

  WHEREFORE, Plaintiff requests that this Court enter Judgment in favor of Plaintiff and against Defendant in whatever amount this Court deems reasonable, together with costs, interest and attorneys' fees.

## COUNT II
### Pregnancy Discrimination in Violation of the ELCRA

  50. Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

51. Plaintiff is a member of a protected group under the Elliott-Larsen Civil Rights Act, M.C.L. 37.2202(1)(d) on the basis of her pregnancy and/or a related medical condition.

52. Defendant violated the aforementioned Elliott-Larsen Civil Rights Act by the following acts:

   a. Terminating/constructively discharging or otherwise discriminating against Plaintiff with respect to her employment, compensation, or a term, condition or privilege of employment, because of pregnancy and/or a related medical condition;

   b. Limiting, segregating, or classifying Plaintiff in a way which deprived or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff because of pregnancy and/or a related medical condition;

   c. Segregating, classifying or otherwise discriminating against Plaintiff on the basis of pregnancy and/or a related medical condition with respect to a term, condition or privilege of employment, including a benefit plan or system; and

   d. Failing to provide a work environment free from pregnancy and/or a related medical condition discrimination.

53. As a direct and proximate result of Defendant's violation of the Elliott Larsen Civil Rights Act, Plaintiff has suffered bodily injury, feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future.

54. As a further direct and proximate result of Defendant's violation of the Elliott Larsen Civil Rights Act, Plaintiff has been placed in financial distress and has

suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and ability to work and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

WHEREFORE, Plaintiff requests that this Court enter Judgment in favor of Plaintiff and against Defendant in whatever amount this Court deems reasonable, together with costs, interest and attorneys' fees.

## COUNT III
### Sex/Pregnancy Discrimination in Violation of Title VII

55. Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

56. Plaintiff is a member of a protected group under the Title VII Civil Rights Act, 42 U.S.C.A. § 2000e, *et seq.*, on the basis of her sex, as used in the Act the term because of sex includes because of pregnancy.

57. Defendant violated the aforementioned Title VII Civil Rights Act by the following acts:

   a. Terminating/constructively discharging, or otherwise discriminating against Plaintiff with respect to her employment, compensation, or a term, condition or privilege of employment, because of her sex;

   b. Limiting, segregating, or classifying Plaintiff in a way which deprived or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff because of her sex;

    c.    Segregating, classifying or otherwise discriminating against Plaintiff on the basis of her sex with respect to a term, condition or privilege of employment, including a benefit plan or system;

    d.    Subjecting Plaintiff to Family Responsibilities discrimination;

    e.    Failing to provide a work environment free from sex discrimination.

58. As a direct and proximate result of Defendant's violation of the Title VII Civil Rights Act, Plaintiff has suffered bodily injury, feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future.

59. As a further direct and proximate result of Defendant's violation of the Title VII Civil Rights Act, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and ability to work and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

WHEREFORE, Plaintiff requests that this Court enter Judgment in favor of Plaintiff and against Defendant in whatever amount this Court deems reasonable, together with costs, interest and attorneys' fees.

## COUNT IV
## Retaliation in Violation of the ELCRA

60. Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

61. Plaintiff engaged in conduct protected under ELCRA, i.e., opposing conduct which was, or which she reasonably believed to be, sex/pregnancy discrimination and a hostile work environment on the basis of her sex/pregnancy.

62. Defendant had knowledge of Plaintiff's protected activity.

63. Defendant subsequently took adverse, retaliatory actions against Plaintiff including, but not limited to, severe or pervasive retaliatory harassment and/or intimidation, failure to remediate the hostile and harassing environment and conduct, material changes in the terms and conditions of her employment, and termination/constructive discharge.

64. Plaintiff's protected conduct was a significant factor in Defendant's decision to retaliate against her.

65. Defendant's retaliation would not have occurred but for Plaintiff's engagement in activity protected by ELCRA.

66. Defendant's actions were retaliatory and in violation of ELCRA.

67. As a direct and proximate result of Defendant's violation of ELCRA as aforestated, Plaintiff has suffered emotional and physical distress, mental and physical

anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

68. As a further direct and proximate result of Defendant's violation of ELCRA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and ability to work, and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

WHEREFORE, Plaintiff requests that this Court enter Judgment in favor of Plaintiff and against Defendant in whatever amount this Court deems reasonable, together with costs, interest and attorneys' fees.

## COUNT V
### Retaliation in Violation of Title VII

69. Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

70. Plaintiff engaged in conduct protected under Title VII, i.e., opposing conduct which was, or which she reasonably believed to be, sex/pregnancy discrimination and a hostile work environment on the basis of her sex/pregnancy.

71. Defendant had knowledge of Plaintiff's protected activity.

72. Defendant subsequently took adverse, retaliatory actions against Plaintiff including, but not limited to, severe or pervasive retaliatory harassment and/or intimidation, failure to remediate the hostile and harassing environment and

conduct, material changes in the terms and conditions of her employment, and termination/constructive discharge.

73. Plaintiff's protected conduct was a significant factor in Defendant's decision to retaliate against her.

74. Defendant's retaliation would not have occurred but for Plaintiff's engagement in activity protected by Title VII.

75. Defendant's actions were retaliatory and in violation of Title VII.

76. As a direct and proximate result of Defendant's violation of Title VII as aforestated, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

77. As a further direct and proximate result of Defendant's violation of Title VII, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and ability to work, and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

### Count VI
### Termination in violation of Public Policy

78. Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

79. It is the statutorily enacted public policy of Michigan that "[t]he opportunity to obtain employment…without discrimination because of…familial status…as prohibited by this act, is recognized and declared to be a civil right." M.C.L.A. § 37.2102(1).

80. It is unlawful and in violation of the public policy of the State of Michigan for an employer to discharge or take other adverse action against an employee because the employee exercises a right conferred by a well-established legislative enactment.

81. It is unlawful and in violation of the public policy of the State of Michigan for an employer to discharge or take other adverse action against an employee who acts in accordance with a statutory right or duty.

82. Plaintiff is a member of a protected group, exercised a right, and/or, acted in accordance with a civil right conferred by Michigan's Elliott Larsen Civil Rights Act, to wit, she is parent with at least one child under the age of 18 who resides with her and/or she was pregnant at relevant times.

83. Defendant violated the aforementioned public policy and conferred and statutory rights and duties by the following acts:

   a. Terminating/constructively discharging, or otherwise discriminating against Plaintiff with respect to her employment, compensation, or a term, condition or privilege of employment, because of her familial status;

    b. Limiting, segregating, or classifying Plaintiff in a way which deprived or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff because of her familial status;

    c. Segregating, classifying or otherwise discriminating against Plaintiff on the basis of her familial status with respect to a term, condition or privilege of employment, including a benefit plan or system;

    d. Subjecting Plaintiff to familial status discrimination;

    e. Failing to provide a work environment free from familial status discrimination.

84. As a direct and proximate result of Defendant's violation of Michigan's public policy, Plaintiff has suffered bodily injury, feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future.

85. As a further direct and proximate result of Defendant's violation of Michigan's public policy, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and ability to work and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

WHEREFORE, Plaintiff requests that this Court enter Judgment in favor of Plaintiff and against Defendant in whatever amount this Court deems reasonable, together with costs, interest and attorneys' fees.

## **Prayer for Relief**

**WHEREFORE**, Plaintiff prays that this Honorable Court grant the following remedies:

- A. Declare that the aforementioned practices and actions of Defendant constitute unlawful employment practices in violation of Title VII, ELCRA, and Michigan's public policy;

- B. Declare that the aforementioned practices and actions of Defendant constitute unlawful employment practices in violation of Title VII, ELCRA, and Michigan's public policy;

- C. Award Plaintiff all lost wages, past and future, to which she is entitled;

- D. Award Plaintiff compensatory damages;

- E. Award Plaintiff exemplary damages;

- F. Award Plaintiff punitive damages;

- G. Award Plaintiff reasonable attorney fees, costs and interest; and

- H. Award such other relief as this Court deems just and proper.

Respectfully submitted,

*s/*Teresa J. Gorman
Teresa J. Gorman (P61001)
Teresa J. Gorman PLLC
Attorneys for Plaintiff
5700 Crooks Road, Suite 200
Troy, MI 48098
Tel: (248) 763-6943 Fax: (248) 689-3268
terigorman@aol.com

                              Charlotte Croson (P56589)
                              Croson, Taub & Michaels PLLC
                              Attorneys for Plaintiff
                              455 East Eisenhower Parkway, Suite 75
                              Ann Arbor, MI 48108
                              Tel: (734) 519-0973
                              Fax: (734) 519-0876
                              ccroson@ctmlawyers.com

## JURY DEMAND

Plaintiff demands a jury trial.

                              <u>s/Teresa J. Gorman</u>
                              Teresa J. Gorman (P61001)
                              Teresa J. Gorman PLLC
                              Attorneys for Plaintiff
                              5700 Crooks Road, Suite 200
                              Troy, MI 48098
                              Tel: (248) 763-6943 Fax: (248) 689-3268
                              terigorman@aol.com